NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **THE TRAVELERS LLOYDS INSURANCE COMPANY,** *Plaintiff*, v. **RIGID GLOBAL BUILDINGS, LLC, et al.,** *Defendants*. | Civil Action No. 18-5814 OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court by way of Plaintiff Travelers Lloyds Insurance Company's ("Plaintiff" or "Travelers") Motion for Summary Judgment. ECF No. 50. For the reasons that follow, the Motion is **GRANTED**.

## I. FACTUAL BACKGROUND[1]

This matter is an insurance dispute concerning whether damages flowing from alleged construction deficiencies at Grand Slam's facilities are covered under the policies Plaintiff issued to Rigid Building Systems, Ltd. ("RBS").[2]

---

[1] The facts are drawn from Defendants Grand Slam Partners, LLC's and Randolph Enterprises, LLC's (collectively "Grand Slam") Statement of Material Facts, ECF No. 53.18 ("GS SOMF").

[2] In December 2010, RBS filed for bankruptcy, and in January 2011 the bankruptcy court approved a sale of RBS to Rigid Global Buildings, LLC ("RGB"). Travelers Compl. ¶ 4, ECF No. 1. As explained in more detail infra, throughout the underlying state court action relevant to this matter, RBS and RGB were referred to collectively as "Rigid." For simplicity, the Court will do the same in this Opinion, unless a distinction between RBS and RGB is necessary.

1

### A. The Tennis Center

In 2007, Jennifer Rogers, the principal of Grand Slam, contracted with non-party Beta Realty Unit 6, LLC ("Beta") to develop an indoor tennis center in Randolph, New Jersey. GS SOMF ¶ 2; Grand Slam Third Amended Complaint ¶¶ 24-26, ECF No. 53.4 ("Grand Slam Compl."). Beta worked with The Adkins Group, Inc. ("Adkins") to design the center, and Adkins contracted with Rigid to manufacture a pre-engineered metal building for the site. GS SOMF ¶¶ 3-4. The tennis center was built and opened for business in 2009. Grand Slam Compl. ¶ 58.

### B. The Grand Slam Action

On October 15, 2015, Grand Slam brought a negligence action for damages against various contractors, including Rigid,[3] based on water leaks that occurred at the tennis center between 2009 and 2012, particularly following Hurricane Irene (August 2011) and Superstorm Sandy (October 2012), see GS SOMF ¶¶ 9, 13, 16, as well as a partial roof collapse following a snow storm in February 2014, see Grand Slam Compl. ¶¶ 72-76. The suit proceeded in the Superior Court of New Jersey, Law Division, Morris County (the "Grand Slam Action"). GS SOMF ¶ 9.

At oral argument on motions in limine, Grand Slam's counsel agreed that it would not introduce "any receipts or any costs for" damages between 2009 and 2011, Grand Slam April 30, 2018 Hearing Tr. at 29:4-30:3, ECF No. 50.11, and the trial court entered an order that Grand Slam was "prohibited from presenting evidence of any damages from events in 2009 to 2011." ECF No. 50.10 ("Grand Slam in limine Order").[4]

---

[3] The Grand Slam Complaint named RGB as a defendant; Adkins brought a third-party complaint against both RGB and RBS. See Pl. Mem. at 2, ECF No. 50.1; Adkins Compl., ECF No. 50.8. As previously noted, RGB and RBS were treated collectively as "Rigid" at the Grand Slam trial. See Grand Slam Order of Judgment, ECF No. 50.12.

[4] This motion in limine was specifically offered by Rigid. See Grand Slam April 30, 2018 Hearing Tr. at 28:19-29:8.

At trial, a central theory of liability was that Rigid had only designed the tennis center to a "Ground Snow Load" of thirty pounds-per-square-foot ("PSF"), when the Township of Randolph's building code required a Ground Snow Load of thirty-five PSF. Id. ¶¶ 47, 60; see also May 8, 2018 Grand Slam Trial Tr. at 54:11-55:10, ECF No. 50.9. Grand Slam also presented evidence that, upon inspection following the partial collapse in February 2014, Rigid's pre-engineered metal structure was missing bolts, the rod bracing was not tight, and the frame was "deflected" and "deformed." See, e.g., May 3, 2018 Grand Slam Trial Tr. at 16:1-18, 184:7-8, ECF No. 53.9. The tennis center was closed for several months for repairs following the partial collapse, and once the repairs were complete, one of the tennis center's six courts was not usable. See Grand Slam Mem. at 9-11 (collecting trial transcript citations), ECF No. 53.

Ultimately, the jury found for Grand Slam and, on August 2, 2018, a judgment in the amount of $1,633,036.65 was entered against Rigid. Grand Slam Order of Judgment at 2. The jury found that Rigid was responsible for:

- 10% of the damages flowing from "the structural repair of the collapsed portion of the [tennis center]." Grand Slam May 29, 2018 Trial Tr. at 92:17-93:7, ECF No. 50.13.
- 55% of the damages flowing from "the structural repair to bring the [tennis center] building to code." Id. at 94:1-15.
- 33% of the damages for "past business loss." Id. at 95:8-20.
- 33% of the damages for "future business loss." Id. at 96:10-22.[5]

---

[5] These four jury findings will be collectively referred to as the "Jury Damages Verdict."

### C. The Travelers Policies

Plaintiff issued two consecutive occurrence-based commercial general liability ("CGL") policies to RBS; the first was effective from March 1, 2009 to March 1, 2010 and the second was effective from March 1, 2010 to March 1, 2011 (the "Travelers Policy Periods"). See ECF No. 50.15 (the "Travelers Policies"). The Travelers Policies provide that Plaintiff "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Id. at 15. To trigger coverage, bodily injury or property damage must be "caused by an 'occurrence' that takes place in the 'coverage territory,'" and must occur during the policy period, subject to various exclusions laid out in the policy. Id. at 15-19.

"Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same harmful conditions." Id. at 28. "Property damage" is defined as:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Id. at 29.

## II. PROCEDURAL HISTORY

Plaintiff filed this action on April 9, 2018. See Travelers Compl. The one-count Complaint seeks a declaration that the damages awarded in the Grand Slam Action are not covered by the Travelers Policies and that Plaintiff is not obligated to defend or indemnify Rigid for the claims in the Grand Slam Action. Id. ¶¶ 28-35. Plaintiff moved for summary judgment on July 19, 2019, ECF No. 50, which Grand Slam opposes, ECF No. 53.

### III.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with available affidavits, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[S]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party."  Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988).  All facts and inferences must be construed in the light most favorable to the non-moving party.  Peters v. Del. River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994).

### IV.    DISCUSSION

Plaintiff argues that summary judgment is warranted because no property damage "occurred" during either policy period, and thus the Travelers Policies do not cover the damages awarded in the Grand Slam Action.  The Court agrees.

#### A.    Traditional Theory

Plaintiff first asserts that Rigid's liability in the Grand Slam Action did not arise from any "occurrence" that took place during the Travelers Policy Periods.  Pl. Mem. at 7.

As noted, the Travelers Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same harmful conditions."  Travelers Policies at 28.  In construing a nearly identical term, the New Jersey Supreme Court held: "As a general rule, the time of the 'occurrence' of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed but the time when the complaining party was actually damaged."

5

Hartford Accident & Indem. Co. v. Aetna Life & Casualty Ins. Co., 98 N.J. 18, 27 (1984) (citing Muller Fuel Oil Co. v. Ins. Co. of N. Am., 95 N.J. Super. 564, 578 (App. Div. 1967)).

Here, Grand Slam was not "actually damaged" until after the Travelers Policies had expired. As explained above, Grand Slam could not—and indeed, was barred from—presenting any evidence of damages from the 2009 to 2011 time period. See Grand Slam in limine Order at 2. The $1.6 million verdict against Rigid was based exclusively on the costs to repair structural damage to the tennis center from the partial roof collapse in February 2014 and the business losses that flowed from that collapse. See Jury Damages Verdict. As such, the "occurrence" which led to "property damage"—the February 2014 partial roof collapse—occurred well after the expiration of the Travelers Policies in March 2011. This result is consistent with the interpretation of the term "occurrence" in other construction defect cases. See, e.g., Yarrington v. Camarota, 138 N.J. Super. 398, 402-03 (App. Div. 1971) (finding that fire resulting from negligence in construction was not an "occurrence" within the CGL insurance policy in effect at the time of construction because the fire "occurred eight months after the [relevant] policy period" ended), aff'd sub nom. Yarrington v. Baldwin Manor, Inc., 60 N.J. 169 (1972); Deodato v. Hartford Ins. Co., 143 N.J. Super. 396, 402-03 (Law Div. 1976) (finding that damage to roof in 1973 that arose from negligence in construction was not an "occurrence" for purposes of earlier policies), aff'd 154 N.J. Super. 263 (App. Div. 1977); Epic Mgmt., Inc. v. Harleysville Ins. Co. of N.J., 2010 WL 3516902, at *3-4 (N.J. Super. Ct. App. Div. Aug. 31, 2010) (similar). Because Grand Slam cannot point to any proof of damages from the Travelers Policy Periods, they cannot demonstrate an "occurrence" triggering coverage under the Travelers Policies.

B.  **Continuous Trigger Theory**

Relying on Potomac Insurance Co. of Illinois ex rel. OneBeacon Insurance Co. v. Pennsylvania Manufacturers Association Insurance Co., 215 N.J. 409, 425 (2013), Grand Slam argues that an "occurrence" took place under the "continuous trigger" theory of injury. See Grand Slam Mem. at 15-19.  The Court disagrees.

The continuous trigger theory of injury for third-party personal injury and property damage claims was first articulated in Owens-Illinois, Inc. v. United Ins. Co., 138 N.J. 437 (1994), where the New Jersey Supreme Court decided "what constitutes an 'occurrence' for purposes of determining which insurers must provide coverage to an insured named as a defendant in asbestos-related . . . cases." Potomac, 215 N.J. at 422 (citing Owens-Illinois, 138 N.J. at 449-51, 474-75).[6] The theory "was fashioned to address the difficulties of establishing with scientific certainty when the harmful effects of a progressive disease or injury have occurred." Air Master & Cooling, Inc. v. Selective Ins. Co. of Am., 452 N.J. Super. 35, 47 (App. Div. 2017).

Repeating—not abandoning—the general rule that the timing of an "occurrence" is "not the time the wrongful act is committed but the time when the complaining party is actually damaged," Owens-Illinois, 138 N.J. at 452 (citing Hartford Accident, 98 N.J. at 18), the New Jersey Supreme Court found that personal injury from asbestos "occurs when asbestos is inhaled and retained in the lungs," owing to "the progressive nature of asbestos-induced disease." Id. at 454 (internal citations and quotation marks omitted).  The decision was premised on several policy considerations, including "mak[ing] the most efficient use of the resources available . . . [and] provid[ing] incentives that parties should engage in responsible conduct that will increase,

---

[6] Importantly, the definition of "occurrence" at issue in Owens-Illinois is substantially identical to the definition in the Travelers Policies. See 138 N.J. at 447 ("An 'occurrence' means 'an accident, including continuous or repeated exposure to conditions, which results in Bodily Injury or Property Damage neither expected nor intended from the standpoin[t] of the Insured.'")

7

not decrease, available resources." Id. at 472.  Thus, "when progressive indivisible injury or damage results from exposure to injurious conditions for which civil liability may be imposed, courts may reasonably treat the progressive injury or damage as an occurrence within each of the years of a CGL policy." Id. at 478.[7]

In the years following Owens-Illinois, New Jersey courts have expanded the continuous trigger theory to numerous other "progressive forms of third-party injuries," including "environmental contamination," "cases involving harmful exposure to substances," and "implicitly . . . in a construction defect context" regarding one insurer suing a co-insurer for litigation defense costs. See Air Master, 452 N.J. Super. at 45-46, 48 (collecting cases); Potomac, 215 N.J. at 424-25 (same).

In arguing for coverage, Grand Slam relies primarily on Air Master, where the Appellate Division found that the "progressively-worsening nature of a variety of construction defects, such as water infiltration or mold, logically support the application of the continuous-trigger doctrine," 452 N.J. Super. at 48. See Grand Slam Mem. at 16-19. A close reading of Air Master, however, does not compel a finding of coverage.

Air Master involved an occurrence-based CGL insurance coverage dispute regarding progressive, third-party property damage from water infiltration, allegedly caused by "defective construction work" on the roof of a residential condominium building.[8] 452 N.J. Super. at 38-39. Though residents began to lodge complaints as early as 2008, the Appellate Division "declined to treat" that evidence "as conclusive proof that the progressive injury had sufficiently 'manifested'

---

[7] The Court explained that the continuous trigger theory also requires a method for allocating damages across multiple insurers: "the extent to which each triggered policy shall provide indemnity . . . is related to both the time on the risk and the degree of risk assumed." Owens-Illinois, 138 N.J. at 479.

[8] The insurance policy at issue in Air Master contained a definition of "occurrence" that is substantially identical to that in the Travelers Policies. See 452 N.J. Super. at 41 (defining "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions").

8

by that time" for purposes of the continuous trigger and remanded to the trial court for further fact development on the "occurrence" of the damages. Id. at 54-55.

The Air Master panel relied heavily on the reasoning from Winding Hills Condominium Association, Inc. v. North American Specialty Insurance Co., 332 N.J. Super. 85 (App. Div. 2000), which was a "first-party case applying the manifestation theory of coverage." Air Master, 452 N.J. Super. at 51.[9] Winding Hills also involved construction defects that appeared over time. In November 1989, plaintiffs in the case hired an engineering consultant to conduct a periodic review of their property. 332 N.J. Super. at 88. As part of that review, the consultant identified "structural deficiencies" in two buildings in 1990. Id. The plaintiffs then retained those consultants to "determine the extent and cause of the deficiencies," which they did via a report issued in January 1991. Id. The Winding Hills panel concluded that the date of the January 1991 report was "the first date upon which plaintiff had knowledge of the loss and hence [was] the date on which the loss was manifest" for insurance coverage purposes. Id. at 89. The Air Master panel applied this reasoning to find that an occurrence is manifest at "the revelation of the inherent nature and scope of th[e] injury." 452 N.J. Super. at 53. The "manifestation cannot be merely tentative (as [the consultant's] original observations of structural problems in Winding Hills apparently were) . . . [n]or must the manifestation be definitive or comprehensive." Id. at 53.

Applying that reasoning here, the Court is satisfied that Rigid is not entitled to coverage under a continuous trigger theory. "[P]roperty damage must, in fact, occur before an insurer's liability on a CGL policy can be invoked under the 'continuous trigger' theory." Aetna Cas. & Sur. Co. v. Ply Gem Indus., Inc., 343 N.J. Super. 430, 457 (App. Div. 2001). Here, all of the

---

[9] While Winding Hills involved a first-party claim, to which the continuous trigger theory did not apply, the Appellate Division in Air Master reasoned that the "manifestation theory" of injury applicable to first-party claims raises issues that are instructive in determining the scope of coverage under the continuous trigger theory for third-party claims. See Air Master, 452 N.J. Super. at 51-52.

damages attributed to Rigid in the Grand Slam Action relate to the 2014 partial roof collapse. See Jury Damages Verdict. Indeed, Grand Slam offered absolutely no proofs of damages from 2009 to 2011—the Travelers Policy Periods. See Grand Slam in limine Order. Grand Slam's assertion that there were "water leaks at the Tennis Center . . . as early as 2009," GS SOMF ¶ 16, even if accepted as true, is insufficient to trigger coverage. If an expert consultant's initial observations of structural damages were insufficient to manifest an occurrence for purposes of coverage, see Winding Hills, 332 N.J. Super. at 88, then Grand Slam's reports of early leaks at the tennis center—devoid of any evidence whatsoever that they contributed to the damages assigned to Rigid in the Grand Slam Action—are clearly too "tentative" to trigger coverage.[10] See Air Master, 454 N.J. Super. at 53-54 (finding that anecdotal reports of water damage were insufficient to constitute "conclusive proof that the progressive injury had sufficiently 'manifested' by" the date of those reports and an accompanying news article); see also May 10, 2018 Grand Slam Trial Tr. at 96:4-9 (Grand Slam's economic expert testifying that 2014 partial roof collapse "was the cause, the triggering event to cause the drop in . . . [Grand Slam's] business"), ECF No. 56.4.

Moreover, even if the Court accepts that the 2009-2011 leaks were an occurrence that started the continuous trigger, the analysis does not end there. "The next step [is] to determine what damage occurred during each of the triggered policy periods in order to calculate the extent of each policy's exposure." Benjamin Moore & Co. v. Aetna Cas. & Sur. Co., 179 N.J. 87, 98 (2004). The wholesale lack of any damages from the Travelers Policy Periods defeats Grand Slam's arguments for coverage. Said differently, the fact that no damages can even be allocated to the Travelers Policy Periods demonstrates that there is no basis for coverage.

---

[10] Indeed, Grand Slam even concedes that they are "not seek[ing] coverage for the damages arising from these leaks." GS SOMF ¶ 16. Instead, Grand Slam attempts to characterize the Jury Damages Verdict as "consequential economic damages arising from Rigid's failure to properly manufacture the Tennis Center's steel structure." Id.

Because any evidence of injury during the Travelers Policy Periods is "merely tentative," it cannot constitute an occurrence giving rise to a continuous trigger theory of coverage. See Air Master, 452 N.J. Super. at 53. As such, Plaintiff is entitled to summary judgment.[11]

## V. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment is **GRANTED**. An appropriate order follows.

Dated: 02/13/2020

/s Madeline Cox Arleo
**HON. MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

---

[11] Because the Court finds that Rigid is not entitled to coverage under the definition of "occurrence" within the Travelers Policies, it need not reach the parties' arguments regarding the definition of "property damage" or exclusions to the Travelers Policies.